| 86 | 347 |
| 104 | 245 |

MANN v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroad : CROSSING OUT OF REPAIR.** Where a railroad owes no duty to one to keep a private crossing in repair, he cannot recover for an injury sustained by his wagon thereon caused by the crossing being out repair.

2. ——— : ——— : NOTICE. A railroad is not liable for an injury resulting from its crossing being out of repair, unless it had notice of such fact or the defect existed a sufficient length of time to justify the presumption of notice.

*Appeal from Daviess Circuit Court.*—HON. S. A, RICHARDSON, Judge.

REVERSED.

This was an action to recover damages for injuries sustained by plaintiff's wagon by reason of a collision with one of defendant's trains at a private crossing located on the land of another. It was averred in the petition that prior to the eighteenth day of September, 1877, the defendant "undertook and agreed to construct and maintain a crossing for the use of the public as a highway" at the point in question; that in constructing said crossing it became necessary to construct a small bridge to span a ditch which ran along the railroad; that at said point defendant constructed two gates in the fence, on each side of its right of way, "in order that travelers might pass through thereat;" that after said crossing and gates were constructed, the traveling public, being informed of the provisions made for the public travel through said gates and over said crossing, "began to pass through said gates and over said crossing and have ever since continued so to do, by the consent and invitation of the defendant;" that on the eighteenth day of September, 1877, plaintiff attempted to drive a loaded wagon across said bridge, when, "by reason of its insufficient and rotten condition, negligently constructed and maintained by defendant," it gave way and let his wagon into the ditch, whereby it became fastened upon the crossing, and that while it was so fastened, one of defendant's trains negligently and carelessly ran against and destroyed said wagon.

Among other things, the defendant answered, that

"the plaintiff had no right to drive his said team over said crossing; that, at the time and place mentioned, plaintiff, without leave or authority, was attempting to drive his horses with said wagon across the right of way and track of this defendant, and that said horses were then and there so carelessly, negligently and improperly managed by plaintiff, that the accident and damage to plaintiff, if any, was caused solely by such careless, negligent and improper management and driving of said horses, and not by the fault or neglect of defendant."

On the trial the plaintiff introduced evidence tending to show that the bridge was defective, and that he "knew its condition before the accident;" that his son attempted to drive across the bridge with a load of wood, and that while doing so the horses shied, causing one of the wheels of the wagon to run too near the east end of the bridge, when the bridge broke at that end and let the wheel down.

After making an unsuccessful effort to get the wagon off the railroad track the driver attempted to signal an approaching train, but was unable to do so in time to prevent a collision. The plaintiff also introduced evidence tending to show that the crossing was established about a year before the accident, by section men, with the consent of Matthew R. Mann, the owner of the land. He testified:

"The section boss or some of the men came to me and asked for permission to change the crossing from my farm crossing to the crossing now used. 1 gave my consent, and the crossing now used was put in. It was built of poles, I think, two, three or four inches thick. Do not know how long bridge had been there, but think about a year."

The plaintiff also offered evidence to show by one T. F. Rogers, that the crossing was put in pursuant to an agreement between Rogers and the "road boss." Rogers testified:

" The crossing was established where it now is when the road was fenced, by an agreement between me and a man I understood to be the 'road boss.' I was not an officer at the time, and do not remember the name of the 'road boss.' The next time I passed there I saw the crossing was put in. The name was given me by Milt Ewing."

The testimony of Matthew R. Mann and T. F. Rogers was admitted over the defendant's objections. Under the instructions given by the court the jury found for the plaintiff, and the defendant appealed.

*M. A. Low* for appellant.

*Hicklin, Taylor* and *Callison* for respondent.

PER CURIAM.—In our opinion plaintiff has no right of action or standing in court. The defendant owed no duty to him even if the crossing were defective or out of repair. In addition to that, the defect, if any, does not appear to have been brought to the notice of the company, or that the defect had existed for a sufficient time from which to presume notice to the defendant.

If the party, for whose benefit the crossing was built had, in like circumstances been injured, a different question would, perhaps, be presented, not necessary now to be considered. Judgment reversed.