[No. 6052.  Decided July 9, 1906.]

WILLIAM F. NINNEMAN, *Appellant,* v. A. M. FOX *et al.,* *Respondents.*[1]

CORPORATIONS—STOCKHOLDERS—RIGHT TO SUE FOR INJURY TO CORPORATION. A stockholder in a corporation cannot maintain an action against third parties for breach of contract between them and the corporation, or for fraud resulting in injury to the corporation, nor for depreciation in the value of the stock or loss of dividends, where the corporate authorities have not refused to act in the matter.

SAME—DAMAGES TO STOCKHOLDER—REMOTENESS. Damages sustained by a stockholder and officer in a corporation from loss of employment and reputation are too remote to be recovered by the stockholder in an action against third parties, whether the act of the defendants causing the injury was a breach of contract between them and the corporation or a tort against the corporation.

1Reported in 86 Pac. 213.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered September 7, 1905, in favor of the defendants, upon sustaining a demurrer to the complaint, dismissing an action brought by a stockholder against a third party for defrauding the corporation. Affirmed.

*Charles L. Heitman, R. L. Edmiston (William T. Birdsall,* of counsel), for appellant.

*Cullen & Dudley,* for respondents.

RUDKIN, J.—The legal sufficiency of the complaint is the only question presented on this appeal. The pleading itself is somewhat voluminous, but we think the following statement will sufficiently disclose the nature of the plaintiff's demand. Between the years 1901 and 1904, the Hope Lumber Company, a corporation, of the state of Idaho, was engaged in the manufacture and sale of lumber, and during that period the plaintiff was its manager at a salary of $1,200 per year. The capital stock of the company was $25,000, and the plaintiff was, during the times complained of, the owner of one-fifth of the capital stock. In March, 1902, the company entered into a contract with the defendants whereby the company agreed to sell, and the defendants agreed to buy, the entire output of manufactured white and yellow pine lumber from the company's mills for the period of one year. In March, 1903, this contract was extended for an additional year, or until March, 1904. Between March, 1902, and March, 1904, the defendants and their agents defrauded the Hope Lumber Company out of the sum of $11,390.25, by means of false tally lists and by deception and concealment as to the quantity and value of the lumber delivered under the above contract.

The complaint avers that by reason of this fraud the business of the company diminished in value, the dividends on its stock were lessened, and the stockholders suffered injury and loss. It is further averred that the stockholders became

dissatisfied with the small dividends received, and concluded that the plaintiff was not a competent person to manage the affairs of the company; that the stockholders requested and demanded that the plaintiff resign as manager, and that he assign his stock to the other stockholders; and that by reason of this request and demand the plaintiff did resign and did transfer his stock to the other stockholders. The damages claimed may be itemized as follows: (1) Loss arising from the depreciation in the value of the plaintiff's stock, $7,000; (2) one-fifth of the amount out of which the defendants defrauded the Hope Lumber Company, the same being a hidden asset of said company at the time the plaintiff transferred his stock, $2,278; (3) damages resulting from the enforced resignation of plaintiff and injury to his reputation, $15,000. A general demurrer to this complaint was sustained, and from the order of dismissal the present appeal is prosecuted.

The damages claimed by the appellant may be divided into two classes: First, damages resulting to him as a stockholder; and second, damages resulting from the loss of employment and injury to his reputation. All the authorities agree that a stockholder, as such, cannot maintain an action against a third person, either for a breach of a contract between such third person and the corporation of which he is a stockholder, or for an injury to the corporation or its property. All such wrongs must be redressed by the corporation itself and in the corporate name. The rule is thus stated in 26 Am. & Eng. Ency. Law (2d ed.), 970:

"A stockholder, merely as such, cannot have an action in his own behalf against one who has injured the corporation, however much the wrongful acts have depreciated the value of his shares. Thus, he cannot sue at law to recover for goods sold by the corporation, or in equity to enforce specific performance of its contracts; nor can he maintain an action of replevin in his own name to recover corporate property. The rule applies to wrongful acts committed by directors, officers, or majority stockholders of the corporation, as well as to those committed by strangers. And

the fact that the complaining stockholder has become the owner of all the capital stock, or that the corporation has done no business for a number of years, and has no property excepting the claim sued upon, does not enlarge his rights in this respect."

We have no reference now to suits brought by a stockholder where the corporate authorities refuse to act. No such case is presented here. On the contrary, it is admitted that the defendants made full reparation to the Hope Lumber Company after the appellant ceased to be a stockholder. It is manifest, therefore, that the appellant has no cause of action against the respondents for the loss of dividends or for damages resulting from the depreciation in the value of his stock. He had no such right of action as a stockholder, and it will not be maintained that he occupies a stronger position since he transferred his stock.

We think it is equally well settled that the other damages claimed by the appellant are too remote, and this, whether we view the acts of the defendants as a mere breach of contract or as a tort against the corporation. In *Roddy v. Missouri Pac. R. Co.,* 104 Mo. 234, 15 S. W. 1112, 24 Am. St. 333, 12 L. R. A. 746, the court said:

"The right of a third party to maintain an action for injuries resulting from a breach of a contract between two contracting parties, has been denied by the overwhelming weight of authority of the state and Federal courts of this country and the courts of England. To hold that such actions could be maintained, would not only lead to endless complications, in following out cause and effect, but would restrict and embarass the right to make contracts by burdening them with obligations and liabilities to others, which parties would not voluntarily assume: *Winterbottom v. Wright,* 10 Mees. & W. 109; *Burdick v. Cheadle,* 26 Ohio St. 393; *Maguire v. Magee,* 13 Atl. Rep. (Penn.) 551; *Necker v. Harvey,* 49 Mich. 518; *Savings Bank v. Ward,* 100 U. S. 195; *Deford v. State,* 30 Md. 195; *Marvin Safe Co. v. Ward,* 46 N. J. L. 19; *Sproul v. Hemmingway,* 14 Pick. 1; *Mann v. Railroad,* 86 Mo. 347; *Lampert v. Gaslight Co.,* 14 Mo. App. 376; *Gordon v. Livingston,* 12 Mo. App. 267.

"The rule is put upon two grounds, either of which is unquestionably sound.   One ground is given by the court in the opinion in *Winterbottom v. Wright,* as follows: 'If we were to hold that plaintiff could sue in such a case, there is no point at which such actions would stop.   The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty.'   The other ground is thus stated in the New Jersey case above cited: 'The object of parties in inserting in their contracts specific undertakings with respect to the work to be done is to create an obligation *inter sesse.*   These engagements and undertakings must necessarily be subject to modifications and waiver by the contracting parties.   If third persons can acquire a right in a contract, in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts.'

"Plaintiff, not being a party to the contract, cannot maintain this action on account of injuries resulting from any breach of duty defendant owed Pickle, arising purely out of the terms of the contract between them."

See, also, *Buckley v. Gray,* 110 Cal. 339, 42 Pac. 900, 31 L. R. A. 862.

If it be claimed that the acts of the respondents amounted to a tort against the corporation, the same rule applies. *Dale v. Grant,* 34 N. J. L. 142; *Anthony v. Slaid,* 11 Met. (Mass.) 290; *Rockingham Mut. Fire Ins. Co. v. Bosher,* 39 Me. 253, 63 Am. Dec. 618; *Connecticut Mut. Life Ins. Co. v. New York etc. R. Co.,* 25 Conn. 265, 65 Am. Dec. 571; *Carpenter v. Pennsylvania R. Co.,* 13 App. Div. 328, 43 N. Y. Supp. 203.   In *Connecticut Mut. Life Ins. Co. v. New York elc. R. Co., supra,* the court said:

"An individual slanders a merchant and ruins his business; is the wrong doer liable to all the persons, who, in consequence of their relations by contract to the bankrupt, can be clearly shown to have been damnified by the bankruptcy? Can a fire insurance company, who have been subjected to loss by the burning of a building, resort to the responsible author of the injury, who had no design of affecting their interest, in their own name and right?   Such are the compli-

cations of human affairs, so endless and far-reaching the mutual promises of man to man, in business and in matters of money and property, that rarely is a death produced by a human agency which does not affect the pecuniary interest of those to whom the deceased was bound by contract. To open the door of legal redress to wrongs received through the mere voluntary and factitious relation of a contractor with the immediate subject of the injury, would be to encourage collusion and extravagant contracts between men, by which the death of either through the involuntary default of others, might be made a source of splendid profits to the other, and would also invite a system of litigation more portentous than our jurisprudence has yet known. So self-evident is the principle that an injury thus suffered is indirectly brought home to the party seeking compensation for it, that courts have rarely been called upon to promulgate such a doctrine."

Where a contract is entered into for the benefit of a third person, or where a tort is committed against one person for the purpose of maliciously injuring another, a different rule applies, but no such case is presented here.

The demurrer was properly sustained, and the judgment is affirmed.

MOUNT, C. J., FULLERTON, HADLEY, DUNBAR, CROW and ROOT, JJ., concur.